**[J-98-2025]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| ERIE INSURANCE PROPERTY & CASUALTY COMPANY | : | No. 103 MAP 2024 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 148 CD |
| v. | : | 2023 entered on May 29, 2024, |
| | : | Reversing the Decision of the |
| | : | Workers' Compensation Appeal |
| DAVID HEATER (WORKERS' | : | Board at No. A22-0810 entered on |
| COMPENSATION APPEAL BOARD) | : | January 30, 2023. |
| | : | |
| | : | ARGUED: November 20, 2025 |
| APPEAL OF: DAVID HEATER | : | |

**OPINION**

**CHIEF JUSTICE TODD**                    **DECIDED: March 26, 2026**

Pursuant to Section 311 of the Workers' Compensation Act (the "Act"),[1] 77 P.S. § 631, an employee who suffers a work-related injury must give notice to his employer within 120 days of the injury; if such notice is not provided, compensation is disallowed.[2]

---

[1] Act of June 2, 1915, P.L. 736 (as amended, 77 P.S. §§ 1 *et seq.*). The section numbers in the Act are distinct from, but correspond to, the sections provided in Purdon's Pennsylvania Statutes, which is an unofficial codification of Pennsylvania law. As the parties refer to the sections in the Act in their arguments, we will do so as well. However, when quoting the Act, we use the Purdon's citations.

[2] Section 311 of the Act provides, in relevant part:
> Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed.

(continued…)

In this appeal, we consider whether an individual who is the sole owner and employee of a business is required to provide his insurance carrier with notice of his work-related injury within 120 days on pain of forfeiting his right to workers' compensation benefits. As we conclude that Section 311 does not require such an individual to notify his insurer of his work-related injury within 120 days in order to be eligible for compensation, we reverse the Commonwealth Court's decision below and remand this matter to the Workers' Compensation Appeal Board ("Board") for proceedings consistent with this opinion.

## I. Factual and Procedural History

In 2014, Appellant David Heater ("Appellant") was the sole owner and employee of a general contracting business, "David W. Heater." Appellant applied for workers' compensation insurance through his insurance agent, Jim Reagle of Loring M. Reagle & Son. On the application, Appellant identified "David W. Heater" as the insured business. On August 22, 2014, Erie Insurance Property & Casualty Company ("Erie") issued a Certificate of Liability Insurance (the "Policy").

On September 28, 2015, Appellant was performing roof repairs as a subcontractor to Pip's Roofing when he allegedly fell from a ladder and fractured his neck, requiring immediate surgery. Subsequently, Appellant sought workers' compensation benefits under the Policy. Erie, which maintained that it did not receive notice of Appellant's injury until sometime in February 2017, issued a Notice of Workers' Compensation Denial ("NCD") on February 24, 2017, disputing that Appellant was injured during the course of his employment. Rather, Erie averred that Appellant was injured when he attempted to perform a backflip while he was on a break. Notably, Erie did not check the box on the NCD indicating that it was denying Appellant's claim because Appellant "did not give notice of his/her injury or disease to the employer within 120 days within the meaning of

77 P.S. § 631.

Sections 311-313 of the Workers' Compensation Act."  NCD, 2/24/17, at 4 (R.R. 433a).  However, Erie did check the box titled "Other good cause" and added the following language:  "Statutory Exemptions (Sole Proprietor, Corporate Officer, etc.)."  *Id.* (capitalization altered).

On September 6, 2018, Appellant filed a claim petition with the Pennsylvania Bureau of Workers' Compensation ("Bureau"), naming himself as the claimant; "David W. Heater" as "Defendant/Employer," and Erie as the insurer.  Appellant sought total disability benefits as of the date he was injured, as well as payment of medical bills and counsel fees.  Erie filed an answer in which it maintained, *inter alia*, that Appellant was not injured within the scope of his employment; that the Policy did not cover Appellant as a sole proprietor; and that Appellant's claim petition was barred by the notice provisions of the Act.

The matter was assigned to a workers' compensation judge ("WCJ"), and, at a June 2019 hearing, Appellant testified that he called his insurance agent, James Reagle, in October 2015, while he was in the hospital, to notify him of his injury.  Reagle, however, testified that he did not recall receiving a call from Appellant in 2015; that he never spoke directly with Appellant; and that he first learned of Appellant's injury when he received a telephone call from Appellant's attorney in February 2017, at which time he advised Appellant's attorney that Appellant was required to report his injury directly to Erie.  Relevant herein, the WCJ ultimately credited the testimony of Reagle, and concluded that, because Appellant failed to provide notice to Erie within 120 days of his injury, as required by the Section 311 of the Act, Appellant was not eligible for compensation.  WCJ Decision, 7/21/20.

Appellant appealed the WCJ's determination to the Board challenging the WCJ's findings on the issue of notice, and asserting that Section 311 does not require a claimant

who is also his own employer to provide notice of his injury to the insurer. Moreover, Appellant argued that, because he was his own employer, employer's notice of his injury was instantaneous. In an opinion dated July 29, 2021, the Board reversed the WCJ's decision on the notice issue,[3] finding that Appellant's position was supported by the Commonwealth Court's decision in *Travelers Ins. Co. v. W.C.A.B. (Levine)*, 447 A.2d 1116 (Pa. Cmwlth. 1982) (observing that Section 311 does not require a claimant to provide notice to an insurer, and no case law supports a contrary interpretation).[4]

---

[3] Before the Board, Erie also challenged the WCJ's decision to the extent it deemed final a prior interlocutory order holding Appellant was covered by the Policy. Although the Board affirmed that aspect of the WCJ's decision, it remanded the matter to the WCJ for a determination on the issue of whether Appellant was injured during the course and scope of his employment. On remand, the WCJ granted Appellant's claim petition for disability benefits, finding the evidence supported a finding that Appellant was injured during the course and scope of his employment; however, the WCJ declined to award Appellant litigation costs because Appellant failed to submit evidence of the same. Appellant and Erie cross-appealed the WCJ's decision, and the Board affirmed the WCJ's grant of Appellant's claim for disability benefits, but remanded the matter to allow Appellant an opportunity to submit to the WCJ evidence of incurred litigation costs.

[4] In *Travelers*, the claimant, who was president and general manager of a corporation, suffered a work-related injury. One day later, the claimant informed a corporate secretary of his injury. However, Travelers, the corporation's insurer, did not receive notice of the claimant's injury until almost a year later. A referee determined that the claimant had sustained a compensable injury, and that valid notice had been provided to Travelers pursuant to Section 311. Travelers maintained that it was not liable for claimant's injury because it did not receive timely notice of claimant's injury. Travelers further argued that, even if claimant gave valid notice to his employer, Travelers was not liable due to the employer's delay in filing the claim. The Commonwealth Court rejected Travelers' argument, noting that the purpose of requiring notice is "to protect the Employer from stale claims for accidental injuries, of which it would have no knowledge, made after the opportunity has passed for full and complete investigation of the circumstances." 447 A.2d at 1118. With respect to Travelers' assertion that the court's interpretation of Section 311 "could lead to an absurd result such as in the case of a one person corporation where an injury to the only employee would require that Claimant give notice of the injury to himself," the court opined: "notice in that circumstance would not be from an individual to an individual but from an individual to a corporation, a different entity, and in the absence of fraud or improper corporate manipulation, would be valid notice under Section 311." *Id.* at 1119.

Erie appealed the Board's decision to the Commonwealth Court, claiming, *inter alia*, that Section 311 of the Act requires a claimant who is injured while working as an employee for his own solely-owned proprietorship to provide notice of his injury to his insurer within 120 days of injury. Erie argued that the Board's determination that, because Appellant was acting as his own employer when he was injured and, thus, that his "employer" had instantaneous notice of his injury, is not only inconsistent with the purpose of Section 311 of the Act, but is also prejudicial to Erie, and violative of Erie's due process rights.

Appellant, conversely, maintained that the plain language of Section 311 does not require a claimant to provide notice of his injury to an insurer, and that, consistent with *Travelers*, a claimant who is a sole proprietor need only provide notice to his employer. Appellant further argued that his interpretation is supported by the Commonwealth Court's decision in *Dick's Delicatessen of Paoli, Inc. v. W.C.A.B. (DeVirgilio)*, 475 A.2d 1345 (Pa. Cmwlth. 1984), wherein the court echoed its holding in *Travelers*, and held that the claimant, who was a shareholder, the president, and the acting manager of a family corporation, did not forfeit his right to compensation under Section 311 by failing to notify his insurer of his work-related within 120 days of the injury, as other members of the corporation had notice of the injury.[5]

---

[5] In *Dick's Delicatessen*, the Commonwealth Court additionally rejected the argument that Section 438 of the Act, which provides that "[a]n employer shall report all injuries received by employees . . . immediately to the employer's insurer," requires a self-employed claimant to immediately report all work-related injuries to his insurance carrier and that noncompliance results in a forfeiture of benefits. The court acknowledged that, "where the claimant and the employer, who ordinarily have interests adverse to one another, are interrelated," the claimant-employer "could sit on his claim indefinitely, later requiring the insurer to defend a claim which it did not have meaningful opportunity to investigate." 475 A.2d at 1349. However, the court explained that, "unlike section 311 of the Act, section 438 does not contain any forfeiture language, and we find no basis for reading such language into that section." *Id.* The court further concluded that "[t]he rights and duties of the employer and the workmen's compensation carrier are contractual matters to be (continued…)

In reply, Erie posited that *Travelers* and *Dick's Delicatessen* are distinguishable because each involved closely-held corporations, and other officers of the corporations had actual knowledge of the claimants' work injuries because they were members of the claimant's family. Erie further disagreed that *Travelers* supports a finding that notice of an injury on the same person who is injured satisfies Section 311, reiterating its position that such interpretation is at odds with the purpose of the provision.

In a unanimous opinion authored by President Judge Renee Cohn Jubelirer, the Commonwealth Court reversed the Board's decision, holding that, because Appellant did not provide timely notice to Erie pursuant to Section 311, he forfeited his right to compensation. *Erie Ins. Property & Casualty Company v. Heater*, 316 A.3d 1104 (Pa. Cmwlth. 2024) ("*Heater*"). The Court first examined its holdings in *Travelers* and *Dick's Delicatessen*, and found those cases distinguishable from the case *sub judice*, stating:

> it is apparent that the rationales therein were predicated on the existence of a **separate corporate entity** to whom the injured employee/corporate officer provided notice, *Travelers Insurance*, or other officers of the **separate corporate entity** that had actual knowledge of the work-related injury, *Dick's Delicatessen*. The Court in *Travelers Insurance* specifically reasoned that it would not disregard, or, essentially, pierce the veil on the **corporate entity**, by finding that the claimant's notice on the close corporation by which he was employed was insufficient for the purposes of Section 311 absent evidence of fraud or manipulation. In doing so, the Court cited [*Gayer v. Quaker Hair Goods*, 289 A.2d 763 (Pa. Cmwlth. 1972)], a case that inquired whether a claimant could "take advantage of the corporate veil[,]" [*id*. at 766], in a WC matter, thereby invoking that concept of corporate law. *Travelers Ins.*,

agreed upon by the parties and set forth in the policy of insurance, rather than determined by the legislature," and opined that the insurer "can guard against possible abuse of the [Act] by close corporations and sole proprietorships by conditioning coverage on compliance with mandatory prompt notification provisions written into the insurance contract." *Id.*

> 447 A.2d at 1118-19. And, while *Dick's Delicatessen* cited *Travelers Insurance* and generally included a reference to claimants who are "the employer" and "sole proprietorships," *Dick's Delicatessen* involved only a close corporation − a legal entity distinct from the injured worker. . . . Quite simply, neither *Travelers Insurance* nor *Dick's Delicatessen* involved this legal and factual scenario, and the broader language appearing to include it in those opinions is non-binding dicta.

*Id.* at 1114 (emphasis original; internal citations and footnote omitted).

In this respect, the court rejected Appellant's assertion that "the form of business carries no legal significance" and that *Travelers* and *Dick's Delicatessen* should apply regardless of the business form, reiterating that it was "the separate and distinct identity of the corporate employer from the claimant that was paramount in *Travelers Insurance* and *Dick's Delicatessen* and formed the basis of the Court's rejection of the insurer's absurdity argument in *Travelers Insurance*." *Id.* at 1114-15. The court further offered that, "corporate officers are expressly covered by the Act as employees, while self-employed persons are not, making the business form relevant in that way." *Id.* at 1115 (citation omitted). Thus, the court held *Travelers* and *Dick's Delicatessen* were not controlling.

The court then turned to Appellant's argument that the plain language of Section 311 supports the Board's finding that he was not required to provide notice of his injury to Erie because the term "employer," as contained in Section 311, does not include an insurer. Initially, the court observed that the term "employer" is defined differently in two separate sections of the Act. Specifically, Section 103 provides: "The term 'employer,' as used in this act, is declared to be synonymous with master, and to include natural persons, partnerships, joint-stock companies, corporations for profit, municipal corporations, the Commonwealth, and all governmental agencies created by it." 77 P.S. § 21. In contrast, Section 401 provides: "The term 'employer,' when used in this article, shall mean the employer as defined in article one of this act, or his duly authorized agent,

or his insurer if such insurer has assumed the employer's liability or the fund if the employer be insured therein." *Id.* § 701 (emphasis omitted). Noting that Section 401 includes insurers in its definition of "employer," while Section 103 does not, the court concluded that, when reading Section 311 "in context with other provisions of the Act, two plausible interpretations of that term become apparent." *Heater*, 316 A.3d at 1116. Thus, the court deemed Section 311 to be ambiguous as to whom notice must be provided when the injured employee and the employer are the same.[6]

Having determined that Section 311 is ambiguous, the Commonwealth Court turned to the Statutory Construction Act of 1972 ("SCA")[7] to ascertain the legislature's intent. In finding that, for purposes of Section 311, the legislature intended that the term "employer" include insurers, the court focused primarily on two of the factors set forth in Section 1921(c) of the SCA,[8] specifically, the object to be obtained by the provision, and the consequences of an alternative interpretation. The court reasoned:

---

[6] In support of its finding that the "divergent definitions of employer within the Act contribute to Section 311's ambiguity," *Heater*, 316 A.3d at 1117, the court relied on this Court's decision in *Kramer v. W.C.A.B. (Rite Aid Corp.)*, 883 A.2d 518 (Pa. 2005), wherein we considered whether Section 204(a), which authorizes, *inter alia*, an offset to an employer for severance payments received by a claimant, applied to all employers, or only self-insured employers. Observing that the question concerned the "remedial aspects of the Act," and, specifically, "the rights afforded to employers who participate in the workers' compensation system and to their insurers," we held that the broader definition of "employer" under Section 401 applied, such that both self-insured and non-self-insured employers are entitled to take an offset. *Kramer*, 883 A.2d at 528 (citing *Brown v. Travelers Ins. Co.*, 254 A.2d 27 (Pa. 1969) (plurality) (equating the employer and its workers' compensation insurance carrier for remedial purposes, and refusing to draw a distinction between self-insured and privately insured employers)). We discuss *Kramer* in more detail below.

[7] 1 Pa.C.S. § 1501 *et seq.*

[8] Section 1921(c) of the SCA provides that the intention of the General Assembly may be ascertained by considering, *inter alia:* (1) the occasion and necessity for the statute; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other statutes upon the same or (continued…)

interpreting Section 311 using the broader definition of employer and requiring an injured claimant/employer to provide notice to the insurer within 120 days in these circumstances *meets the object to be obtained by that provision in that its purpose is to protect against stale claims,* notice of which is given "after the opportunity has passed for full and complete investigation of the circumstances." Notice by the claimant on the insurer in these circumstances allows the insurer, rather than the claimant/employer (who has an obvious interest in the outcome of such investigation), to control the investigation of an alleged work injury sustained by a claimant/employer that may otherwise be delayed to the detriment of the insurer.

*Id.* at 1118 (emphasis added; citation omitted). The court continued:

the consequences of interpreting Section 311 otherwise creates a potential class of claimants, those who are sole proprietors and injured, who are not subject to the forfeiture/loss of benefits provision of Section 311 for failing to give notice within 120 days of the injury, unlike other, non-self-employed claimants who must give such notice to their employers. Sole proprietor claimants can, in essence, control the investigation of their own injury by delaying notice on the insurer until the last possible moment, sometimes years after the injury, as Claimant did here, thereby defeating the purpose of the provision. This leaves the insurer, which bears the ultimate liability for the claim, unprotected from stale claims and without the ability to timely investigate and formulate all of its possible defenses.

*Id.*

The court opined that adopting a broader definition of the term "employer" to include an insurer will avoid the above-described "absurd results," which the legislature presumably did not intend. *Id.* (citing 1 Pa.C.S. § 1922(1) (General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable)). Thus, the court

---

similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history; and (8) legislative and administrative interpretations of such statute. *Id.* § 1921(c). Courts may also bear in mind other presumptions, including that legislature does not intend a result that is absurd or unreasonable. *Id.* § 1922(1).

held: "where a claimant is both the injured employee and the sole proprietor/employer, the 'employer' to whom the claimant must notify of a work-related injury for the purposes of Section 311 is the insurer that bears the ultimate liability for the claim." *Id.* at 1118-19. As Appellant did not notify Erie within 120 days of his injury, the court concluded he was not entitled to compensation for his injury.

Appellant filed a petition for allowance of appeal with this Court, and we granted review to determine whether the Commonwealth Court erred in holding that, pursuant to Section 311 of the Act, the failure of an owner of a sole proprietorship who suffers a work-related injury to notify his workers' compensation insurance carrier with 120 days of the injury precludes his recovery of compensation.

## II.      Arguments

Appellant contends that, under the plain language of Sections 311 and 103 of the Act, an injured employee is required to give notice of his injury only to his employer, which may consist of a person, a corporation, or another entity.   He asserts that the Commonwealth Court, in holding that an injured employee who is also a sole proprietor must provide notice of his injury to his insurance carrier, failed to abide by the mandates of the SCA, which require that statutory language be interpreted according to its plain language.  Specifically, Appellant avers that the court improperly "inserted a requirement into Section 311 that injured workers must notify the insurer of a claim under certain circumstances when no such language exists in the plain language of the statute." Appellant's Brief at 18 (citing *Fonner v. Shandon, Inc.*, 724 A.2d 903, 378-79 (Pa. 1999) (where the legislature includes specific language in one section of the statute and excludes it from another, the language should not be implied where excluded)).

Along these lines, Appellant maintains that the Commonwealth Court erred in applying the definition of "employer" set forth in Section 401, rather than the definition of

"employer" contained in Section 311. He emphasizes that the definition of "employer" in Section 401, which provides "[t]he term 'employer,' when used in this article," 77 P.S. § 701, clearly demonstrates that the legislature intended to limit Section 401's broader definition to the provisions of Article IV, which concern the procedure for processing claims before workers' compensation judges and the Board, not the notice requirements of Section 311.

Additionally, Appellant submits that the Commonwealth Court erred in distinguishing the instant case from its prior decisions in *Dick's Delicatessen* and *Travelers*, both of which expressly held that Section 311 does not require an injured employee to give notice to an insurer, even if the employee is also the employer. Appellant further suggests that the Commonwealth Court's reliance on *Kramer* was misplaced, in that *Kramer* addressed the different definitions of "employer" in Section 103 and Section 401 in the context of the immunity and severance provisions of the Act, not Section 311.

Finally, Appellant points out that the Commonwealth Court neglected to acknowledge that, in *Dick's Delicatessen,* it rejected the petitioner/insurer's reliance on Section 438 of the Act, which requires an employer to "report all injuries received by employes in the course of or resulting from their employment immediately to the employer's insurer," *id.* § 994(a), on the ground that Section 438 contemplates a contractual remedy for the insurer against the employer, but, importantly, does not contain a forfeiture remedy against the injured worker. Appellant submits that the Commonwealth Court's holding in *Dick's Delicatessen* was correct because, *inter alia*, an injured employee is not the appropriate person to report a claim to an insurer; an injured employee may not know the identity of the insurer, or to whom the injury should be reported; and the contractual obligation is between the employer (policyholder) and the

insurance company. Appellant's Brief at 26. For all of the foregoing reasons, Appellant urges this Court to hold that the Commonwealth Court erred in concluding that he was required under Section 311 to notify Erie of his work-related injury within 120 days thereof, and that, by failing to do so, he waived his right to compensation.[9]

Erie, on the other hand, maintains that the Commonwealth Court properly determined that Section 311 requires an injured claimant who is both a sole proprietor and his own employer to notify his insurer of his injury within 120 days. Recognizing that Section 311 does not define "employer," and that Sections 103 and Section 401 define the term differently, Erie argues that the language of Section 311 is ambiguous as to whether an insurer must be considered an "employer" for purposes of the notice requirement.

Moreover, Erie submits that application of the rules of statutory construction supports the Commonwealth Court's holding. Specifically, Erie offers that the purpose of Section 311 "is to protect the employer from stale claims for injuries, of which it would have no knowledge, made after the opportunity for a full and complete investigation had passed." Erie's Brief at 24-25 (quoting *City of Philadelphia v. Workers' Compensation Appeal Board (Williams)*, 851 A.2d 838, 848 (Pa. 2004)). Erie argues that, in situations where an injured claimant is a sole proprietor, excluding insurers from Section 311's notice requirement will undermine the purpose of Section 311 by creating a privileged class of claimants that do not have to abide by the statutory requirements.

Additionally, Erie insists that applying the broad definition of "employer" under Section 401 is consistent with this Court's holdings in *Kramer* and *Brown*, because

---

[9] The Pennsylvania Association for Justice ("PAJ") filed an *amicus* brief in support of Appellant, echoing the arguments proffered by Appellant.

Section 311 is remedial in nature.[10]  Erie further argues that the use of the broader definition of "employer" in Section 401 is not confined to Article IV, despite the "when used in this article" language, observing that this Court in *Kramer* and *Brown* applied the Section 401 definition to provisions in Articles II and III of the Act.  Erie also points out that, on at least one occasion, Section 311 was "strictly construed against" a claimant. *See Canterna v. U.S. Steel Corp.*, 317 A.2d 355, 356 (Pa. Cmwlth. 1974).

Moreover, Erie disputes Appellant's claim that the Commonwealth Court's decision in this case is inconsistent with its prior holdings in *Travelers* and *Dick's Delicatessen*; Erie contends that those cases are factually distinguishable from the instant case because the injured employees in those cases provided notice of their injury to employers who were separate corporate entities, whereas, here, "employee and employer are one and the same," and, thus, no separate corporate entity had notice of the injury.  Erie's Brief at 44.

Finally, Erie argues that "the purported availability of a civil or criminal action against the sole proprietor" is an insufficient remedy, as it will "impose additional burdens on insurer with no guarantee of success."  *Id.* at 50.  Similarly, Erie argues that Section 438 is a "wholly inadequate remedy, as it provides only for penalties against the employer, which in this case no longer exists as a business."  *Id.*  In sum, Erie contends that,

---

[10] In his reply brief, Appellant notes that *Brown* was a plurality opinion, and argues that this Court did not definitively hold therein that Section 401 applies to insurers.  He further submits that, even if this Court were to conclude that Section 401's definition of "employer" applies to Section 311, notice to the insurer would not be required because Section 401 refers to "insurer" in the alternative:  "The term 'employer,' when used in this article, shall mean the employer as defined in article one of this act, *or* his duly authorized agent, *or* his insurer if such insurer has assumed the employer's liability *or* the fund if the employer be insured therein."  Appellant's Reply Brief at 5 (quoting 77 P.S. § 701) (emphasis original).  Thus, according to Appellant, "if Section 401 applies, then an injured employee would only have to give notice to the employer *or* the insurer, not both."  *Id.* (emphasis original).

because Appellant did not provide Erie with notice of his work-related injury within 120 days, Appellant forfeited his right to compensation.

### III.    Analysis

Our review of workers' compensation matters is limited to determining whether there has been a constitutional violation, an error of law, or a violation of the Board's procedure, and whether the findings of fact are supported by substance evidence. *Gentex Corp. v. W.C.A.B. (Morack)*, 23 A.3d 528 (Pa. 2011).  The instant case presents a question of law, specifically, whether Section 311 requires an injured employee who is a sole proprietor to notify his insurer of his work-related injury within 120 days of the injury. Our standard of review over questions of law is *de novo* and our scope of review is plenary.  *Herold v. University of Pittsburgh*, 329 A.3d 1159, 1170 n.7 (Pa. 2025).

Additionally, as this question is one of statutory interpretation, we are guided by the SCA.  1 Pa.C.S. § 1501 *et seq*.  The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly.  *Id.* § 1921(a).  Generally, the plain language of the statute provides the best indication of legislative intent.  *Ursinus College v. Prevailing Wage Appeals Board*, 310 A.3d 154, 170 (Pa. 2024).  Thus, when the language of a statute is plain and unambiguous, it must be construed according to its clear meaning.  1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").  In this vein, we may not insert words into a statute that are plainly not there.  *Ursinus College*, 310 A.2d at 170.

When the statutory language is not explicit, but, rather, is susceptible to two or more reasonable interpretations, the statute is deemed to be ambiguous.  *Snyder Brothers, Inc. v. Pennsylvania Public Utilities Commission*, 198 A.3d 1056, 1073 (Pa. 2018) ("If a statutory term, when read in context with the overall statutory framework in

which it appears, has at least two reasonable interpretations, then the term is ambiguous."). When faced with an ambiguous statute, courts may discern the legislature's intent by considering some or all of the factors the General Assembly has identified in Section 1921(c) of the SCA. *See supra* note 8.

To reiterate, at issue in this case is Section 311 of the Act, which provides:

> Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed.

77 P.S. § 631.

As discussed above, although Section 311 does not define the term "employer," the Act contains two distinct definitions of the term "employer" – one in Section 401, which includes an insurer, and one in Section 103, which does not include an insurer. However, Section 311 does not expressly indicate which definition of employer applies. As a result, the Commonwealth Court opined that application of *either* definition results in a plausible interpretation of the statute, concluded that Section 311 is ambiguous, and proceeded to consider the factors set forth in the SCA in order to determine the legislature's intent. Upon review, we find that the Commonwealth Court discerned an ambiguity in Section 311 where none exists.

Article I of the Act is titled "Interpretation and Definitions." Significantly, Section 103 of Article I provides: "The term 'employer,' *as used in this act*, is declared to be synonymous with master, and to include natural persons, partnerships, joint-stock companies, corporations for profit, corporations not for profit, municipal corporations, the Commonwealth, and all governmental agencies created by it." *Id.* § 21 (emphasis added).

In using the phrase "as used in this act," Section 103 indicates that the definition provided therein generally applies to the whole of the Act.

Section 401, however, which is contained in Article IV ("Procedure"), provides: "The term 'employer,' *when used in this article*, shall mean the employer as defined in article one of this act, or his duly authorized agent, or his insurer if such insurer has assumed the employer's liability or the fund if the employer be insured therein." *Id.* § 701 (emphasis added). The legislature's use of the language "when used in this article" in Section 401 patently demonstrates its intent to limit Section 401's definition of employer to the provisions of Article IV. As Section 311 falls *outside* of Article IV, it is clear that the definition of employer contained in Section 401 does not apply to Section 311, and, thus, that the general default definition set forth in Section 103 controls. Accordingly, we conclude the Commonwealth Court erred in finding Section 311 to be ambiguous as to the issue of whether an injured employee, who is a sole proprietor, is required to notify his insurer of his work-related injury, and, therefore, the court should not have considered the factors set forth in Section 1921(c) of the SCA in an effort to resolve this supposed ambiguity. *See* 1 P.S. § 1921(b).[11]

With respect to the Commonwealth Court's assertion that our decision in *Kramer* supports its finding that Section 311 is ambiguous, s*ee supra* note 6, we disagree. As noted above, in *Kramer*, we addressed, *inter alia*, whether Section 204(a) of the Act, 77 P.S. § 71,[12] allows all employers, or only self-insured employers, to take an offset against

---

[11] As our resolution of this case is based on our finding that the plain language of the Act does not require the owner of a sole proprietorship who suffers a work-related injury to notify his insurer of his work-related injury within 120 days in order to be eligible for compensation, we need not address Appellant's claim that the Commonwealth Court erred in distinguishing its decisions in *Travelers* and *Dick's Delicatessen* from the instant case.

[12] Section 204(a) provides, in relevant part:
(continued…)

a claimant's workers' compensation benefits for the amount of severance payments made by the employer to the claimant. In concluding that Section 204(a) was "ambiguous with respect to the specific question presented," we initially observed that the General Assembly's use of the word "liable," as in "severance benefits paid by the employer directly liable for" workers' compensation payments, *Kramer*, 883 A.2d at 522,

> could be construed either narrowly – as evidencing liability in the sense of the entity who ultimately writes the compensation check, which would suggest that only self-insured employers would be entitled to the offset – or more broadly, as speaking in terms of the legal predicate for the award of workers' compensation benefits. In the latter instance, a privately insured employer could be said to be "liable" for the payment of compensation, even though, by obtaining private insurance, that employer secured a source for discharging its liability for the actual benefits payment.

*Id.* at 526.

We then suggested that the different definitions of the term "employer" contained in Sections 103 and 401 of the Act "*contribute[d]* to the ambiguity." *Id*. (emphasis added). In this regard, we highlighted that, in *Brown*, *supra*, our Court considered the varying definitions of the term "employer" in the context of determining whether Section 303 of the Act, 77 P.S. § 481 − which, at the time, referred only to employers, not insurers − conferred the same immunity from common law liability upon an employer's workers' compensation insurer as upon the participating employer itself. Ultimately, the *Brown*

---

> The severance benefits paid by the employer directly liable for the payment of compensation and the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the award made under sections 108 [occupational disease] and 306 [schedule of compensation for total disability], except for benefits payable under section 306(c) [disability resulting from certain permanent injuries].

77 P.S. § 71(a).

plurality concluded that "the insurance carrier is included within the term 'employer' as that word is used in Section 303 and, therefore, shares the employer's immunity from common law liability." *Brown,* 254 A.2d at 31.[13]

We acknowledged in *Kramer* that *Brown* was a plurality decision, but suggested that it has "been treated as binding authority for the proposition that the term 'employer' as used in Section 303 includes insurers." *Kramer,* 883 A.2d at 528 (citing, *inter alia*, *Jadosh v. Goeringer*, 275 A.2d 58, 61 (Pa. 1971) (the issue of whether the term "employer" as used in Section 303 includes an insurance carrier has been finally determined)). Moreover, while accepting that the issue in *Kramer* involved a severance offset under Section 204(a), rather than Section 303 immunity, we noted that both questions dealt with the remedial aspects of the Act, specifically, the rights afforded to participating employers and their insurers, and, thus, found "convincing" and "controlling" the analysis of the plurality in *Brown* and subsequent decisions, "which equates the employer and its workers' compensation insurance carrier for remedial purposes (and thus draws no distinction between self-insured and privately-insured employers)." *Id.*

For several reasons, we decline to apply the reasoning of *Kramer* and *Brown* in the instant case. First, neither *Kramer* nor *Brown* addressed the "when used in this article" language contained in Section 401, which, as discussed above, plainly limits Section 401's definition of employer to the provisions of Article IV.

---

[13] As in the instant case, the claimant in *Brown* argued that Article IV's definition of "employer" applied *only* to Article IV, and the more restrictive definition of "employer" set forth in Section 103 applied to Article III. The plurality characterized Articles I and IV of the Act as non-substantive, ancillary, and "basically procedural in significance," and reasoned that "it would be pointless and fruitless to discuss the insurance carrier in article I of the act, because the need for insuring could not arise until article III had become operative." 254 A.2d at 28-29.

Second, the plurality's decision in *Brown* seemingly was based not on an express finding of an ambiguity, but, rather, a determination that policy considerations warranted the result reached. *See*, *e.g.*, *Brown*, 254 A.2d at 29 ("[W]e must admit in all candor that the question is not free from doubt on the face of the statute. However, the relevant policy considerations reinforce our conclusion that the legislature intended that the insurance carrier would share in the employer's immunity."). Indeed, in *Kramer*, we recognized that the plurality in *Brown* relied on "three policy considerations weighing in favor" of equating an insurer with an employer.[14] 883 A.2d at 527.

Finally, this Court's findings of ambiguity in *Kramer* and *Brown* were tied to the specific provisions at issue. *See id.* at 526 ("Section 204(a) is ambiguous *with respect to the specific question presented here, i.e., whether all employers, or only self-insured employers qualify for purposes of the severance offset*.") (emphasis added); *Brown*, 254

---

[14] In *Kramer*, we described *Brown's* reliance on policy considerations as follows:

> First, failing to afford immunity to insurers would lead to a "regrettable discrimination . . . between employers who are insured by the State Workmen's Insurance Fund or are self-insuring employers and those employers who carry private insurance." The plurality noted that such discrimination "would be inequitable and unjust both to the employers who utilize private insurance and to their employees." The plurality did not believe that the General Assembly ever intended such discrimination. Second, the plurality noted that a failure to afford insurers the same immunity from tort liability due to employers would discourage insurers from implementing voluntary safety programs in the workplace, for fear of being sued if a program were negligently implemented. Third, the plurality noted that the weight of authority from other jurisdictions supported a holding that insurers were entitled to the same immunity as employers. *Brown,* 254 A.2d at 29-31. For all of those reasons, the plurality concluded that "the insurance carrier is included within the term 'employer' as that word is used in Section 303 and, therefore, shares the employer's immunity from common law liability." *Id.* at 31.

*Kramer*, 883 A.2d at 527-28.

A.2d at 31 ("[T]he insurance carrier is included within the term 'employer' *as that word is used in Section 303*") (emphasis added); *see also Jadosh,* 275 A.2d at 61 (the issue of whether the term employer "*as it is used in Section 303*" of the Act includes an insurance carrier has been finally determined) (emphasis added). Indeed, the logic of those decisions – that an employer and insurer can be "directly liable for" workers' compensation benefits (*Kramer*) or that an employer and insurer can be immune from common law liability (*Brown*) – does not make sense here. Including an insurer in the definition of employer in the context of Section 311 would not require a claimant to notify *both* his employer *and* his insurer, as Section 401 defines "employer" as "the employer as defined in article one . . . *or* his insurer . . . ." 77 P.S. § 701 (emphasis added). Thus, in notifying his "employer," Appellant seemingly complied with the requirements of Section 311 even using Section 401's definition: he notified his employer *or* his insurer. For these reasons, we are not persuaded the holdings in *Kramer* and *Brown* apply beyond their facts or the provisions of the Act that were at issue therein.

On a final note, the Commonwealth Court's concern − that applying the definition of employer set forth in Section 103, which excludes insurers from the notice requirements, "creates a potential class of claimants, those who are sole proprietors and injured, who are not subject to forfeiture/loss of benefits provision of Section 311 for failing to give notice within 120 days of the injury," thus allowing sole proprietors to "control the investigation of their own injury by delaying notice on the insurer until the last possible moment, . . . thereby defeating the purpose of this provision," *Heater*, 316 A.3d at 1118 − is not unfounded. However, such concerns "cannot override the plain language" of a statutory provision, or "contravene the plain meaning" of a term used therein. *Ursinus College*, 310 A.3d at 173 (refusing to broadly interpret the definition of "public work" to effectuate the Pennsylvania Prevailing Wage Act's purpose of protecting workers on

public works from substandard wages when the plain language of the statute did not support that interpretation). Thus, "the task of rectifying perceived deficiencies in the statutory scheme" must be left to the legislature. *Id.*

For the reasons set forth above, we hold that Section 311 does not require an injured claimant who is the sole employee and owner of a business to notify his insurer of his work-related injury within 120 days in order to be eligible for compensation. Accordingly, we reverse the Commonwealth Court's decision below and remand this matter to the Board for further proceedings in accordance with this opinion.

Justices Donohue, Dougherty, Wecht, Mundy, Brobson and McCaffery join the opinion.